MARK YANCEY,

       Petitioner,

                                    CASE NO. 14-13838

v.                                HONORABLE NANCY G. EDMUNDS

JEFFREY WOODS,

       Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
## AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

This matter has come before the Court on petitioner Mark Yancey's habeas corpus petition under 28 U.S.C. § 2254. Petitioner is challenging his state convictions for first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. He maintains that (1) there was insufficient evidence to sustain his convictions, (2) he was denied a fair trial by the admission of hearsay, (3) the prosecutor's remarks deprived him of a fair trial, (4) he was denied the assistance of counsel for several months, and (5) he was denied effective assistance of trial counsel. Respondent Jeffrey Woods urges the Court to deny the petition on grounds that Petitioner procedurally defaulted part of his third claim and the state courts' decisions were not contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The Court agrees that the state courts'

decisions were objectively reasonable. Therefore, Petitioner is not entitled to relief, and the Court will deny the petition.

## I. Background

### A. The Trial and Sentence

The charges against Petitioner were based on allegations that he shot and killed a teenage boy in Detroit, Michigan on May 20, 2009. Petitioner and his co-defendant, Duane Sain ("Sain"), were tried together, but before separate juries, in Wayne County Circuit Court.

The victim's mother, Paula Holliman, testified that her son was sixteen years old when he was killed and that everyone loved him. Dr. Francisco Diaz performed the autopsy on the victim and testified that the victim was shot in the back and on the right knee. The cause of death was multiple gunshot wounds, and the manner of death was homicide.

Detroit police officer Robert Skender was dispatched to the scene of the shooting. He testified that, although there was a street light at the site, it was a little darker than the area where he found the victim. After EMS took the victim to the hospital, he secured the area.

Michael Porter testified that, about 4:00 or 5:00 p.m. on May 20, 2009, he and his friends (Daniel Hines ("Hines"), someone named "C.J.", and the victim) were "hanging out" on Stout Street near Wadsworth Avenue. An argument broke out between the Vaughn Street group, which included Petitioner and Sain, and the Stout Street group, which included C.J. and Hines. The argument pertained to someone named "Jock" or

"Young Jock" who had stolen some drugs from C.J.'s friend. Everyone scattered when someone other than the defendants fired a gun into the air.

Later that same day before 11:00 p.m., he (Porter), Hines, C.J., and the victim walked back to the area of Stout and Wadsworth Streets. A burgundy Caprice car with a black hood and a damaged front end drove up behind them. Hines said, "There they go right there." He (Porter) then turned and noticed that Sain was driving the car, and Petitioner was seated on the passenger side of the car with a gun. He could see the driver because the car drove slowly under a street light, which lit up the car. He heard about ten gunshots come from the car, and, as he and his friends ran away, the victim said that he was hit and fell down. Someone in the car then yelled "Black Point," which was the name of a gang associated with the boys from Vaughn Street.

After the shooting, some older people arrived and appeared to assist the victim. He and Hines ran to his house where he told his mother and sister what had happened; they called the 911 operator. Then he and Hines went to C.J.'s house, and all three of them returned to where the victim had been shot. The police arrived, but he did not speak with any officers at the scene, and the EMS crew took the victim away on a stretcher. He learned the next day that the victim had died. On June 6, 2009, he spoke with Sergeant Diaz and told him what had happened. He also viewed two photo lineups. He identified Petitioner as the shooter and Sain as the driver of the car that drove by him and his friends immediately before the shooting. He knew the defendants from the neighborhood, and, at the time, he thought that Petitioner's name was Monte.

Hines corroborated much of Porter's testimony about the incidents that occurred on May 20, 2009. He stated that Petitioner and Sain were his friends and that he saw them during the argument on the afternoon of May 20, 2009. Later that night, he saw someone shooting from the front passenger seat of a brown Caprice, which had a hood of a different color. He had previously seen Sain driving the car, but he did not see who was driving the car on May 20, 2009. He also did not see who was shooting from the car, and he did not tell Sergeant Diaz that the car belonged to Sain.

Detroit police officer Eugene Fitzhugh testified that he responded to the homicide scene and took photographs. He collected a baseball cap, a tee shirt, a cell phone, and approximately sixteen casings, all of which were nine millimeter casings. He had to use a flashlight because there was no street lighting and it was extremely dark there.

Sergeant Michael Martell of the Detroit Police Department also responded to the scene. He told the evidence technician what to document, photograph, and collect. There were some street lights on, but the area was not well lit.

Detective Lieutenant David Vroman of the Michigan State Police testified that he examined seventeen fired cartridge casings and determined that ten of them came from one gun and the other seven came from another gun. He also examined two fired bullets, but he had no gun with which to compare the bullets, and one of the bullets appeared to be unrelated to the case.

Sergeant Gary Diaz was the officer in charge of the case. He explained that he learned about Porter and Hines from tips and from officers who worked in the area. He interviewed Porter, who identified Petitioner and Sain in photographs and stated that

they were the individuals whom he saw during the shooting. Hines, on the other hand, initially was uncooperative, but he "came clean" and told Diaz what he saw after Diaz showed him Porter's statement. Both Hines and Petitioner told him that the Caprice they saw at the shooting was Sain's car. He investigated other witnesses, including someone named Monte, but he never learned the identity of "C.J.," and he was unable to determine who fired the gunshots on the afternoon of May 20, 2009. He also did not recover a weapon.

Petitioner did not testify or present any witnesses. His defense was that there were holes in the prosecution's case. Defense counsel pointed out to the jury that the lighting was poor at the scene of the shooting and that the only witness to implicate Petitioner was Porter, who could not have seen Petitioner in the car at the time of the shooting. Defense counsel also pointed out that Porter had identified Petitioner as Monte during the pretrial proceedings and that Monte was someone else. Counsel concluded her closing argument by stating that the prosecution had not met its burden of proof and that, if the jurors doubted whether Petitioner pulled the trigger, the only proper verdict was a "not guilty" verdict.

The trial court instructed the jury on second-degree murder as a lesser-included offense of first-degree murder, but on March 3, 2010, Petitioner's jury found him guilty, as charged, of first-degree murder and felony firearm.[1] On March 18, 2010, the trial court sentenced Petitioner to a mandatory term of two years in prison for the felony-firearm conviction and to a consecutive term of life imprisonment without the possibility of parole for the murder conviction.

---

[1] Sain was also found guilty of first-degree murder.

**B. The Direct Appeal and Post-Conviction Proceedings**

On direct appeal, Petitioner challenged the sufficiency of the evidence supporting his murder conviction, the use of hearsay, the prosecutor's conduct, the photographic identification, and the verdict form. The Michigan Court of Appeals rejected Petitioner's arguments and affirmed his convictions. *See People v. Yancey*, No. 297815, 2011 WL 3518212 (Mich. Ct. App. Aug. 11, 2011.) The Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Yancey*, 490 Mich. 974; 806 N.W.2d 738 (2011) (table).

In a subsequent motion for relief from judgment, Petitioner argued that he was denied counsel for several months during the pretrial investigative stage and that trial counsel deprived him of effective assistance. The trial court denied Petitioner's motion in a reasoned opinion. *See People v. Yancey*, No. 09-024170-02-FC (Wayne Cty. Cir. Ct. July 9, 2013). The trial court also denied Petitioner's motion for reconsideration. *See People v. Yancey*, No. 09-024170-02-FC (Wayne Cty. Cir. Ct. Aug. 19, 2013).

Petitioner appealed the trial court's decision, but both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Yancey*, No. 319355 (Mich. Ct. App. Jan. 10, 2014); *People v. Yancey*, 496 Mich. 864; 849 N.W.2d 385 (2014). The Michigan Supreme Court denied Petitioner's motion for reconsideration on September 29, 2014. *See People v. Yancey*, 497 Mich. 872; 853 N.W.2d 375 (2014) (table).

**C. The Habeas Petition and Responsive Pleading**

On October 3, 2014, Petitioner filed his habeas corpus petition through counsel. As noted above, he argues that (1) he was convicted on insufficient evidence, (2) he was denied a fair trial by the admission of hearsay, (3) the prosecutor committed misconduct, (4) he was denied the assistance of counsel for several months during the pretrial stage, and (5) he was denied effective assistance of trial counsel. Respondent argues, among other things, that the portion of Petitioner's third claim which challenges the prosecutor's opening statement and her direct examination of the victim's mother is procedurally defaulted.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). It "is not a jurisdictional matter," *id.*, and to obtain habeas relief on procedurally defaulted claims, a petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (internal citation omitted).

Petitioner's claims lack merit for the reasons given below. And because "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), the Court "cut[s] to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case." *Babick*, 620 F.3d at 576.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "AEDPA sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was 'adjudicated on the merits in State court proceedings.' " *Johnson v. Williams*, 568 U.S. 289, __, 133 S.Ct. 1088, 1094 (2013) (quoting 28 U.S.C. § 2254(d)). The Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Further, " '[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear and convincing evidence.' " *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (quoting 28 U.S.C. § 2254(e)(1)), *cert. denied*, 136 S. Ct. 1384 (2016). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**III. Analysis**

**A.  The Sufficiency of the Evidence**

The first habeas claim alleges that Petitioner was convicted on the basis of insufficient evidence in violation of his right to due process.  Petitioner contends that the testimony of the main prosecution witness was totally inconsistent with his statement to the police and that the investigating detective may have told the witness what to say and whom to identify as the perpetrators of the crime.  Petitioner further alleges that the prosecutor failed to establish his intent.

The Michigan Court of Appeals adjudicated Petitioner's claim on direct appeal and opined that there was sufficient evidence from which a rational trier of fact could conclude that Petitioner was the shooter and that he premeditated the shooting. Petitioner maintains that the state court failed to provide a reasonable or thoughtful analysis of the issue and, instead, used boilerplate language to resolve the issue.

**1.  Legal Framework**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of
> guilt beyond a reasonable doubt.  But this inquiry does not require a
> court to "ask itself whether *it* believes that the evidence at the trial
> established guilt beyond a reasonable doubt."  Instead, the relevant
> question is whether, after viewing the evidence in the light most

> favorable to the prosecution, *any* rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt. This familiar standard gives full play to the responsibility of
> the trier of fact fairly to resolve conflicts in the testimony, to weigh
> the evidence, and to draw reasonable inferences from basic facts to
> ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

The Supreme Court, moreover, has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). Circumstantial evidence in criminal cases is "intrinsically no different from testimonial evidence," *Holland v. United States*, 348 U.S. 121, 140 (1954), and the prosecution has no affirmative duty to rule out every hypothesis except that of guilt, *Jackson*, 443 U.S. at 326.

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, __, 132 S. Ct. 2060, 2062 (2012) (*per curiam*). First, " 'it is the responsibility of the jury . . . to decide what conclusions should be drawn from evidence admitted at trial.' " *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)).

> And second, on habeas review, "a federal court may not overturn a state
> court decision rejecting a sufficiency of the evidence challenge simply
> because the federal court disagrees with the state court. The federal court
> instead may do so only if the state court decision was 'objectively
> unreasonable.' "

*Id.* (quoting *Smith*, 565 U.S. at 2) (quoting *Lett*, 559 U.S. at 773).

Finally, the *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Petitioner disputes the sufficiency of the evidence supporting his first-degree murder conviction. "To establish first-degree premeditated murder [in Michigan], the prosecution must prove that the defendant intentionally killed the victim and the act of killing was deliberate and premeditated." *People v. Haywood*, 209 Mich. App. 217, 229; 530 N.W.2d 497, 503 (1995). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 31 Mich. App. 301, 329; 187 N.W.2d 434, 449 (1971) (internal and end footnotes omitted). "[P]remeditation and deliberation may be inferred from all the facts and circumstances surrounding the incident," *Haywood*, 209 Mich. App. at 229; 530 N.W.2d at 503, including the type of weapon used in the crime. *People v. Berry*, 198 Mich. App. 123, 128; 497 N.W.2d 202, 204 (1993).

### 2. Application

The Michigan Court of Appeals summarized the evidence against co-defendant Sain as follows:

> Two eyewitnesses testified that defendants were part of a group that got into an argument with [the victim] during the day on May 20, 2009. Later that night, when it was dark outside, Porter saw a car, driven by Sain, approach slowly before the passenger fired a gun out of the window. Hines testified that the car also had its headlights off. At the time of the shooting, Porter heard someone yell "black point," which he identified as a reference to the "gang" associated with defendants' neighborhood.

*Yancey*, 2011 WL 3518121, at *4. The Court of Appeals observed that the evidence against Petitioner was identical to the evidence against Sain, "except that Porter

identified [Petitioner] as the shooter, and two witnesses saw [Petitioner] at the altercation earlier in the day." *Id.*

The jury could have inferred from Porter and Hines' testimony that Petitioner deliberately shot and killed the victim and that he premeditated the murder after the argument that occurred earlier in the day. Petitioner merely speculates that the eyewitnesses perjured themselves at trial. The record, in fact, belies the claim. Porter testified that he was being truthful and that no one told him what to say in court. (3/1/10 Trial Tr., at 48.) He also testified that he knew the facts and did not feel pressured to testify. (*Id.* at 54.)

Hines admitted that he initially lied to Sergeant Diaz when he denied knowing anything about the shooting, but he said that Diaz did not pressure him into making a statement and that he had been hesitant to talk because he was "AWOL from [his] placement" at the time. Hines also admitted that he had not wanted to testify, but it appears from the record that his reluctance to testify may have been because Petitioner and Sain were his friends and he still lived in the neighborhood. (*Id.* at 109-12.)

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner shot and killed the victim with premeditation and deliberation. Thus, the evidence was sufficient to sustain Petitioner's conviction for premeditated murder, and the state court's adjudication of Petitioner's claim was not contrary to, or an unreasonable application of, *Jackson.* Although Petitioner points out that the state court did not cite *Jackson* in its decision, "a state court need not cite or even be aware of [Supreme Court] cases" to avoid the pitfalls of § 2254(d). *Richter*, 562

U.S. at 98 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)). Given the deference due the jury's verdict and the state appellate court's decision, the Court concludes that Petitioner has no right to relief on the basis of his challenge to the sufficiency of the evidence.

## B. Hearsay

The second habeas claim alleges that the admission of hearsay at trial deprived Petitioner of a fair trial. The alleged hearsay consisted of Sergeant Diaz' testimony that Hines had said he saw a Caprice at the time of the shooting and that it was Sain's Caprice. (3/2/10 Trial Tr., at 40, 42.) Petitioner argues that the testimony did not come within an exception to the hearsay rule and that it was used as substantive evidence against him, in violation of his Sixth Amendment right to confront the witnesses against him.

### 1. Clearly Established Federal Law

"To the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review." *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). A claim of improperly admitted evidence is no part of a federal court's habeas review of a state conviction because, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Of course, Petitioner's Sixth Amendment claim is cognizable on habeas review, and pursuant to that Amendment, he had "the right . . . to be confronted with the

witnesses against him." U.S. CONST. amend. VI. This clause "does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Idaho v. Wright*, 497 U.S. 805, 813 (1990). Generally, testimonial statements of individuals who are absent from trial are admissible if the declarant is unavailable and the defendant had a prior opportunity to cross-examine him or her. *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004). The term "testimonial" "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

### 2. Application

Hines' statement to Sergeant Diaz – that the Caprice involved in the shooting belonged to Sain – was testimonial because the statement was made during a police interrogation. But Hines testified at Petitioner's trial, and "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9. In other words, the Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.*

"The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted," *id.*, and the prosecutor stated that she was eliciting Sergeant Diaz' testimony to impeach Hines' prior testimony that he did not tell Sergeant Diaz about the car belonging to Sain. (3/2/10 Trial Tr. at 41; *see also* 3/1/10 Trial Tr. at 71-75 (Hines' testimony that he did not tell Sergeant Diaz

that the car belonged to Sain)).  The trial court agreed with the prosecutor's argument and ruled that the testimony was admissible for impeachment purposes.  The court then instructed the jurors not to consider the testimony for the truth of the matter asserted.  The court said that the jurors could consider the testimony only when deciding whether they believed Sergeant Diaz' testimony or Hines' testimony.  (3/2/10 Trial Tr. at 42.)

The Michigan Court of Appeals agreed that Sergeant Diaz' testimony about Hines' out-of-court statement to him was not hearsay because it was offered for impeachment purposes only and not to prove the truth of the matter asserted.  The Court of Appeals concluded that the hearsay rule was not applicable.

Petitioner argues that Hines' statement clearly was hearsay and that it was untrustworthy, unreliable, and extremely prejudicial.  But the state court's interpretation of the Michigan Rules of Evidence binds this Court sitting in habeas corpus, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and Petitioner's reliance on the "indicia of reliability" test of *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), is misplaced.  The Supreme Court eliminated that test in *Crawford*, at least so far as testimonial statements are concerned. *See Crawford*, 541 U.S. at 68-69.

The Court concludes that Petitioner's right of confrontation was not violated by the admission of Sergeant Diaz' testimony regarding what Hines told him.  Furthermore, the alleged error could not have had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), and was harmless because Porter also testified that the Caprice was Sain's car.  (2/25/10 Trial Tr., at 174.)  Habeas relief is not warranted on Petitioner's claim.

16

## C. The Prosecutor's Conduct

The third habeas claim alleges that the prosecutor's comments during opening statements and closing arguments deprived Petitioner of a fair trial. The Court must review claims of prosecutorial misconduct deferentially on habeas review. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

"On habeas review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious so as to render the entire trial fundamentally unfair.' " *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)). "In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Id.* (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)). As noted above, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623. For the reasons given below, the Court finds no merit in Petitioner's claims about the prosecutor.

### 1. Generating Sympathy for the Victim

Petitioner alleges that the prosecutor improperly generated sympathy for the victim. The prosecutor stated in her opening statement that the victim

> was a sixteen-year-old child. His life was cut short. He was taken from his loving parents, his sister, and his brother. His life ended in a violent barrage of gunfire.

> [He] was a good kid who [would] never realize his dream of becoming a
> music producer.  He died as a result of senseless violence.

(2/25/10 Trial Tr. at 115.)

The prosecutor also elicited testimony from the victim's mother that the victim "was a good person," "very family-oriented," and "loved by everyone."  Additionally, the mother stated that the victim wanted to be a music producer and that he had a beautiful relationship with his daughter.  (*Id.* at 127.)

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error affecting substantial rights" because Petitioner did not object to the prosecutor's statements or the mother's testimony at trial.  The Court of Appeals then determined that, even though the statement and testimony were not relevant to any material fact, they did not deprive Petitioner of a fair trial.

Prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Viereck v. United States*, 318 U.S. 236, 248 (1943).  They may not incite the passions and prejudices of the jury by appealing to the jurors' emotions, rather than focusing on the relevant facts, issues, and evidence.  *Id.* at 247-48; *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).  But, as the Michigan Court of Appeals pointed out on direct review, the prosecutor's disputed statement and the mother's testimony about the victim were brief and isolated.  Additionally, the trial court informed the jurors that opening statements were not evidence, but were meant to help the jurors understand how each side viewed the case.  (2/25/10 Trial Tr., at 111.)   The Court therefore concludes that Petitioner was not deprived of a fair trial by the prosecutor's opening remarks and the initial testimony about the victim.

## 2. Vouching

Petitioner's remaining claim about the prosecutor is that she vouched for the credibility of Porter and Sergeant Diaz during closing arguments. The Michigan Court of Appeals stated on review of this claim that the issue was preserved for appellate review, but that the contested remarks were not improper and did not deprive Petitioner of a fair trial.

### a. Clearly Established Federal Law

When the issue is the prosecutor's remarks during closing arguments, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, __, 132 S. Ct. 2148, 2153 (2012) (*per curiam*). In *Darden*, the Supreme Court stated that

> it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

*Darden*, 477 U.S. at 181; *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 852 (6th Cir. 2017) (noting that the Supreme Court's decisions in *Darden* and *DeChristoforo* establish that the relevant question on review of claims of prosecutorial misconduct in closing arguments is whether the prosecutors' comments infected the trial with such unfairness as to make the resulting conviction a denial of due process). The Court must "afford wide latitude to a prosecutor during closing argument, analyzing

disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were 'otherwise fair.' " *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

### b. Application

### i. The Comment about Porter

The first instance of alleged vouching occurred when the prosecutor said,

*What reason does Michael Porter have to lie* about who committed this crime? None at all. There's no beef with Michael Porter and these defendant[s;] he says he knows them from around the neighborhood.

*What reason does he have to lie*? He tells you initially that he doesn't even come forward because he does not want to be involved. He's afraid whether he wants to say it or not.

.  .  .  .

*What reason does Mr. Porter have to lie?*

.  .  .  .

*Think about what reason Mr. Porter may have to lie.*

(3/2/10 Trial Tr., at 119-20) (emphasis added)

"[I]t is improper for a prosecuting attorney in a criminal case to state his [or her] personal opinion concerning the credibility of witnesses or the guilt of a defendant." *United States v. Daniels*, 528 F.2d 705, 709 (6th Cir. 1976). But it is not improper for a prosecutor, in her role as an advocate, to "seek[] to restore, through argument rather than [her] own personal assurance, the credibility of [her] chief witness. That is a permissible prosecutorial function." *United States v. Garcia*, 758 F.3d 714, 723 (6th Cir.

2014).  And arguing that a prosecution witness is credible because the witness had no reason to lie is not improper if the prosecutor did not imply that she personally believed the witness or knew of evidence which demonstrated the witness's truthfulness, but was not before the jury.  *United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007).  The Sixth Circuit's "cases have found improper vouching only where the disputed remark put the spotlight on the prosecutor—the prosecutor's personal beliefs, the prestige of her office, . . . , her unique knowledge of the facts, etc."  *Garcia*, 758 F.3d at 724.

Here, the prosecutor did not express her personal belief in Porter's credibility. She also did not rely on the prestige of her office or on any unique knowledge of the facts.  Instead, she argued on the basis of the admissible evidence that Porter had no motive to lie to the jury.  The remarks did not amount to vouching and were not improper.

### ii.  The Comment about Sergeant Diaz' Purpose

The next instance of alleged vouching occurred when the prosecutor said that Sergeant Diaz' purpose was "to state the truth."  The comment, in context, reads:

> Counsel wants you to believe that Sergeant Diaz had it in for either Mr. Sain or both of these defendant[s].  If Sergeant Diaz had it in for anyone why further investigate?
>
> Why except he gets a statement from Mr. Porter in June.  Why hunt down Mr. Hines?  Why take a statement from Collin Yancey, Marcus Esters and Marcus Jackson?
>
> Why take a statement from those people if he's got it out for these individuals?  *Sergeant Diaz['] purpose is to state the truth.*

(3/2/10 Trial Tr., at 145) (emphasis added)

The prosecutor may have meant to say that Sergeant Diaz' purpose was to seek the truth. In any event, the comment appears to have been a response to a question posed by Sain's attorney on cross-examination of Diaz. Counsel asked Sergeant Diaz whether he had "set in [his] heart that [Sain was] guilty" and whether that was why Sain was on trial. (3/2/10 Trial Tr. at 62.) The prosecutor's closing remark that Sergeant Diaz' purpose was to state the truth was a proper response to defense counsel's questioning of Diaz, which implied that Diaz had a preconceived notion of the defendants' guilt.

Even if the prosecutor's remark improperly suggested that Sergeant Diaz testified truthfully, counsel for Sain objected on the ground that the prosecutor was vouching for the credibility of her witnesses. The trial court then instructed the jury to make its own decision about the credibility of each witness. (*Id.* at 145-46.)

The trial court gave a similar instruction at the beginning and at the conclusion of the trial. During the court's preliminary instructions to the jury, the trial court stated that it was the jurors' responsibility to decide which witnesses to believe, how important they thought the testimony was, and how much of what the witnesses said was believable. The court stated that the jurors were not required to accept everything a witness said and that they were free to believe all, none, or part of a person's testimony. (2/25/10 Trial Tr. at 109, 112.)

At the close of the proofs, the trial court instructed the jurors that the lawyers' statements and arguments were not evidence, but were meant to help the jurors understand the evidence and each side's legal theories. The court also instructed the

jurors to judge the testimony of police officers by the same standards used to evaluate the testimony of other witnesses. (3/2/10 Trial Tr. at 150-52, 155.) In light of these instructions, which the jurors are presumed to have followed, *Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001), the Michigan Court of Appeals reasonably concluded that the prosecutor's comments did not deprive Petitioner of a fair trial.

### iii. The Comment about Witnesses who Identified the Caprice

The final comments in dispute concern witnesses who testified about ownership of the car used in the shooting. This issue first arose when Sain's attorney questioned Sergeant Diaz regarding his determination that Sain owned the brown Caprice involved in the shooting. Sergeant Diaz stated in response to counsel's questions that his conclusion about ownership of the car was based on what Porter, Sain, and six or seven other witnesses had said. (3/2/10 Trial Tr. at 55.) Later, in response to a question by the prosecutor, Sergeant Diaz testified that he did not base his opinion as to ownership of the car solely on what Porter and Hines had said. (*Id.* at 87.) The comments in dispute occurred when the prosecutor stated during her rebuttal argument that several people who provided statements to Sergeant Diaz and who identified Sain's car had no reason to lie. (*Id.* at 146.)

The Michigan Court of Appeals determined that the prosecutor's comment was permissible because it did not involve improper vouching. This Court agrees. The prosecutor did not say that she personally believed the people whom Sergeant Diaz interviewed, and she did not imply that she knew something about credibility which the

jury did not know.  Therefore, stating that the witnesses who identified Sain's car had no reason to lie was not improper.

In conclusion, the prosecutor had " 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments."  *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009), and, her arguments did not amount to improper vouching. Her remarks also did not infect the trial with such unfairness as to deprive Petitioner of due process.  The Court therefore declines to grant relief on Petitioner's claim that the prosecutor vouched for her witnesses.

## D.  The Absence of Counsel during a Pretrial Stage

The fourth habeas claim alleges that Petitioner was constructively deprived of assistance of counsel for about two months before trial, specifically, from December of 2009 to February 17, 2010.  Petitioner argues that this period was a critical stage of the proceedings and, therefore, no showing of prejudice is required.

Petitioner first raised this claim in his motion for relief from judgment.  The state trial court rejected the claim because Petitioner was not completely denied counsel during the pretrial investigation period and because his attorney had an adequate amount of time to prepare for trial.

### 1.  Clearly Established Federal Law

The Supreme Court has said that, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings."  *Montejo v. Louisiana*, 556

U.S. 778, 786 (2009). In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme

Court

> held that courts may presume that a defendant has suffered
> unconstitutional prejudice if he 'is denied counsel at a critical stage of his
> trial." 466 U.S., at 659, 104 S.Ct. 2039. And in *Bell v. Cone*, 535 U.S. 685,
> 696, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), [the Supreme Court]
> characterized a "critical stage" as one that "held significant consequences
> for the accused."

*Woods v. Donald*, 135 S. Ct. 1372, 1375–76, 191 L. Ed. 2d 464 (2015).

"Pretrial proceedings are 'critical,' then, if the presence of counsel is essential 'to

protect the fairness of the trial itself.' " *United States v. Ash*, 413 U.S. 300, 322 (1973)

(Stewart, J., concurring in the judgment) (quoting *Schneckloth v. Bustamonte*, 412 U.S.

218, 239 (1973)); *see also Gerstein v. Pugh*, 420 U.S. 103, 122 (1975) (stating that the

Supreme Court "has identified as 'critical stages' those pretrial procedures that would

impair defense on the merits if the accused is required to proceed without counsel");

*Mitchell v. Mason*, 325 F.3d 732, 743 (6th Cir. 2003) (stating that "[t]he pre-trial period

constitutes a 'critical period' because it encompasses counsel's constitutionally imposed

duty to investigate the case").

### 2. Application

The state trial court summarized the facts leading to Petitioner's claim as follows:

> Defendant's pre-trial investigation period, from his preliminary examination
> to the first day of trial, lasted just under five months. Mr. [John]
> McWilliams was assigned to represent Defendant. Mr. McWilliams
> represented Defendant from the time of his preliminary exam through a
> pre-trial conference over one month later, where Mr. McWilliams argued a
> motion to quash. According to Mr. McWilliams, a few weeks after arguing
> that motion he stopped representing Defendant. Then Defendant retained
> Ms. [Tiffany] McEvans, who filed her first appearance two months after Mr.
> McWilliams stopped representing Defendant, and one week before trial. . .
> . [D]uring her first formal appearance on behalf of Defendant, Ms.

McEvans failed to correct the Court when the Court cited that she had been on the case since December. Regardless of when she was hired, Ms. [McEvans] represented Defendant for at least the last seven days of his pre-trial investigation period. So, even assuming the facts in a light most favorable to Defendant, . . . he was represented for the first two and a half months, and the last seven days, of his pre-trial investigation period, with a two month gap in between.

*People v. Yancey*, No. 09-024170-02-FC, Op. & Order, at 4 (Wayne Cty. Cir. Ct. July 9, 2013) (footnotes omitted). The trial court concluded that, because Petitioner was not denied counsel for the entire pre-trial investigation period, and because his trial attorney had an adequate amount of time to prepare for trial, he did not suffer any prejudice. (*Id.* at 4-5.)

Petitioner contends that he never had an opportunity to inform Mr. McWilliams of his witnesses or to otherwise assist in his defense. It was not a complicated case, however, and Petitioner's defense was that Porter had mistakenly identified him. He was not denied counsel during the entire pretrial stage of the proceedings, and he should have been able to assist in his defense during the two and a half months or more that he was formally represented by counsel.

The Court concludes that the alleged lack of counsel for a few months before trial did not have significant consequences for Petitioner. The absence of counsel did not impair Petitioner's defense or deprive him of a fair trial. In fact, he stated at trial that he did not wish to testify or to call any witnesses. (3/2/10 Trial Tr., at 109.) As there was not a complete absence of counsel during the pretrial stage, the presumption of prejudice does not apply, and because Petitioner has not shown that he suffered actual prejudice from the temporary lack of counsel, his claim lacks merit.

## E. Ineffective Assistance of Counsel

The fifth and final habeas claim alleges that Petitioner was denied effective assistance of trial counsel. Petitioner claims that Ms. McEvans was not prepared to try his case, that she failed to investigate or call numerous alibi witnesses, and that she failed to inform the trial court that she had only seven days to investigate and prepare for trial.

The state trial court adjudicated this claim on the merits during post-conviction proceedings. The trial court determined that trial counsel was prepared for trial, that she had a sound strategy, and that her decision not to present an alibi defense was strategic, not deficient performance.

### 1. Clearly Established Federal Law

The "clearly established Federal law" for Petitioner's claim is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

The prejudice prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must demonstrate "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).   In a habeas case, moreover, review of an ineffective-assistance-of-counsel claim

> is "doubly deferential," *Cullen v. Pinholster*,  563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted).  In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Burt, supra*, supra, at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

### 2. Application

#### a. Preparation; Failure to Inform

Petitioner alleges that Ms. McEvans was not prepared for trial because she filed an appearance in his behalf seven days before trial.  While it is true that Ms. McEvans filed an appearance on February 17, 2010, and that the trial commenced a week later on February 24, 2010, the record indicates that she was prepared to try the case.  She appears to have been fully aware of the facts before February 17, 2010, because she implied then that she had read the witness statements and the transcript of the preliminary examination.  (Special Pretrial/Motion Hr'g, at 7-8, Feb. 17, 2010.)    And

even though she moved to adjourn the trial, the reason for the motion was Petitioner's last-minute request for her to contact two additional potential witnesses. (*Id.* at 3-4.) At trial, Ms. McEvans made an opening statement, cross-examined witnesses, made a closing argument, and attempted to show that Porter was mistaken when he identified Petitioner as the shooter, because he could not have seen Petitioner in the car.

Ms. McEvans states in an affidavit signed on February 29, 2012, that reasonable time was needed to properly prepare for trial and that she had only seven days to investigate and prepare for trial. But nowhere in the affidavit does she state that she was unprepared. *See* Pet. for Writ of Habeas Corpus, Ex. C. And, as the trial court pointed out on review of Petitioner's claim, the transcript of trial indicates that Ms. McEvans

> had a sound strategy[:] to attack the credibility of the one witness who identified Defendant. Counsel made the jury aware of her intentions to attack the witness' credibility in her opening statement. She repeatedly attempted to impeach that witness during cross-examination, regarding the fact that the witness identified Defendant as someone name Monte. Trial counsel further pursued this line of questioning with the officer in charge as well. When cross examining other witnesses who were at the scene, or investigating the scene, she sought to point out that the lighting in the area was too dark for someone to identify her client. And, she drove her point home one last time during her closing statement.

*People v. Yancey*, No. 09-024170-02-FC, Op. & Order, at 7 (Wayne Cty. Cir. Ct. July 9, 2013) (footnotes omitted). The trial court's conclusion – that, at no point during the trial did counsel appear unprepared – was objectively reasonable..

Petitioner contends that Ms. McEvans should have informed the trial judge that she had only one week to investigate and to prepare the case for trial and that she was unprepared. But the fact that Ms. McEvans had a short time to prepare for trial should

have been obvious to the trial court on February 17, 2010, when Ms. McEvans filed her appearance and moved to postpone the trial date. And because she appears to have been prepared,[2] she was not ineffective for failing to tell the court that she was unprepared.

### b. Failure to Call Alibi Witnesses

Petitioner's final claim about Ms. McEvans is that she failed to investigate Petitioner's alibi defense and call Petitioner's alibi witnesses. Petitioner asserts that he had six witnesses who could have established an alibi defense for him by testifying that he was in a house with them when the shooting occurred.

"[T]he failure to call a known alibi witness generally would constitute ineffective assistance of counsel." *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004); *see also Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (concluding that the failure to investigate a known and potentially important alibi witness was outside the range of professionally competent assistance). "But counsel's strategic decision not to mount an all-out investigation can, in some circumstances, be supported by reasonable professional judgment." *Stadler v. Berghuis*, 483 F. App'x 173, 176 (6th Cir. 2012) (citing *Burger v. Kemp*, 483 U.S. 776, 794–95 (1987)). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. The Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy."

---

[2] She did not contest the court's denial of her motion for an adjournment of the trial date even though the court indicated that it would reconsider the issue if counsel brought something else to the court's attention before trial.

*Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).

The record indicates that Ms. McEvans considered an alibi defense and filed a notice of alibi, but then decided not to pursue the defense. The question then is whether Ms. McEvans was ineffective for failing to adequately investigate an alibi defense and produce alibi witnesses at trial. Petitioner has attached to his habeas petition affidavits from six individuals who attempt to show that Petitioner was at his grandmother's house at the time of the shooting. But even if the Court were to assume that Ms. McEvans failed to fully investigate these six individuals, Sergeant Diaz testified at trial that he interviewed four of the individuals (Collin Yancey, Ronald Pearson, Marcus Ester, and Marcus Jackson), and when he tried to serve them with subpoenas, he was unable to contact or serve them. He opined that they did not want to be notified. (3/2/10, Trial Tr. at 45-46, 51-52.) Thus, any failure to fully investigate the male alibi witnesses did not prejudice the defense.

Petitioner's other two alibi witnesses (Beverly Thornton and Tracy Yancey) apparently were related to him, and Ms. McEvans could have concluded that the women would not have been credible alibi witnesses for that reason. In fact, Tracy Yancey states in her affidavit that Petitioner's trial attorney thought it would appear to the jury that she was trying to cover up for Petitioner if she testified. (Pet. for Writ of Habeas Corpus, Ex. E, page 12.)

Ms. McEvans appears to have made a strategic and reasonable decision concerning the amount of investigation that was necessary and whether an alibi

defense was viable. Petitioner, in fact, stated at trial that he did not wish to testify or present any witnesses (3/2/10 Trial Tr., at 109), and at his sentencing, he expressed satisfaction with Ms. McEvans' services. (3/18/10 Sentencing Tr., at 10). Therefore, the trial court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland,* and Petitioner is not entitled to relief on his claim.

## IV. Conclusion

The state courts' decisions were not contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The decisions also were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the habeas petition is denied.

## V. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists could not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability.


s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated: June 1, 2017


CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Order was served by electronic means or U.S. Mail to Counsel of Record and/or Pro Se Parties on June 1, 2017.


   s/  Carol J. Bethel
Case Manager